UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-60648-CIV-MARRA/SELTZER

VITAL PHARMACEUTICALS, INC.
d/b/a VPX SPORTS, a Florida
corporation,

    Plaintiff,

vs.

STELLA LABS, LLC, a foreign limited
liability company,

    Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendant Stella Labs, LLC's Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) [DE 5], Defendant Stella Labs, LLC's Motion to Dismiss Complaint [DE 6] and Plaintiff Vital Pharmaceutical, Inc.'s Motion to Strike Portions of Defendant Stella Labs, LLC's Reply in Further Support of its Motion to Transfer or, Alternatively, Leave to Submit a Sur-Reply [DE 20]. The Court has carefully considered the motions and is otherwise fully advised in the premises.

### Background

Plaintiff Vital Pharmaceutical, Inc.("VPX" "Plaintiff") has filed a five-count Complaint against Defendant Stella Labs, LLC ("Stella" "Defendant"), alleging Breach of Contract (Count I); Breach of Express Warranty (Count II); Breach of Implied Warranty of Merchantability (Count III); Breach of Implied Warranty of Fitness for a Particular Purpose (Count IV) and Fraud in the Inducement (Count V).

VPX is a manufacturer of dietary supplement products. (Complaint at ¶ 7.) Stella is a bulk seller and supplier of natural raw ingredients for dietary supplement products. (Complaint at ¶ 8.) One of the products sold by Stella is a plant known as Hoodia Gordonii ("Hoodia"), which contains an active extract known as "P-57." (Complaint at ¶ 11.) P-57 can be used as an appetite suppressant. (Complaint at ¶ 11.) David Romeo, an officer of Stella, represented and advertised that the Hoodia offered for sale by Stella was of a grade and quality that contained sufficient concentrations of P-57.[1] (Complaint at ¶¶ 9, 11, 37.)

On or about March 15, 2005, Stella agreed to sell VPX 3000 kilograms of the aforementioned grade and quality of Hoodia for $435,000.00. (Complaint at ¶ 12.) VPX sent Stella a purchase order which did not contain a forum selection clause. (Purchase Order attached to Complaint; Aff. of Jack Owac at ¶ 10, Exh. 1 attached to Pl. Resp. to Transfer.) Upon receipt of VPX's purchase order, Stella sent VPX the Hoodia and enclosed a packing slip. (Packing Slip, Exh. C to Pl. Resp. to Transfer; Aff. of Jack Owac at ¶ 11, Exh. 1 to Pl. Resp. to Transfer) The packing slip did not have a forum selection clause. (Packing Slip, Exh. C to Pl. Resp. to Transfer; Aff. of Jack Owac at ¶ 11, Exh. 1 to Pl. Resp. to Transfer.) However, Stella sent VPX an invoice, dated March 30, 2005, that contained a New Jersey forum selection clause.[2] (Invoice

---

[1] VPX voluntarily dismissed without prejudice its claim for fraud in the inducement against David Romeo on June 27, 2006 [DE 12].

[2] There is a factual dispute as to when Stella sent the invoice. VPX claims it received the invoice after delivery of the goods whereas Stella claims it sent the invoice with the goods. (Compare Aff. of Jack Owac at ¶ 12 with Aff. of V. Craig Payton at ¶¶ 4-5.) Stella, in making this argument, relies on evidence not disclosed until it submitted its reply memorandum. Consequently, VPX has moved to strike portions of that evidence supplied by Stella. Although VPX, as the party opposing the enforcement of the forum selection clause, bears the burden to show the contractual forum is sufficiently inconvenient under 28 U.S.C. § 1404(a), the Court finds that this factual dispute does not affect the outcome in this case. P & S Business Machines,

attached to Complaint.) After conducting independent laboratory tests, VPX discovered that the Hoodia was non-conforming and unfit for its intended use. (Complaint at ¶ 15 .) On or about November 11, 2005, VPX notified Stella of the non-conformity, but Stella failed to cure the defect. (Complaint at ¶ 17; Aff. of Jack Owac at ¶ 16, Exh. 1 to Pl. Resp. to Transfer) Stella has not cured the defect nor returned the $435,000.00 to VPX. (Complaint at ¶¶ 17-18; Aff. of Jack Owac at ¶¶ 18-19, Exh. 1 to Pl. Resp. to Transfer)

In moving for transfer to New Jersey, Stella argues that the invoice's forum selection clause is a valid clause of the contract entered into by VPX and Stella and there is no evidence of fraud, duress or misrepresentation in connection with the agreement of this clause. (Def. Mot. to Transfer at 4-5.) Furthermore, Stella contends that the parties' course of dealing, as well as the acceptance and payment of the March 30, 2005 invoice by VPX, constitutes acceptance of the invoice's terms. (Def. Mot. to Transfer at 5.) In response, VPX argues that the contract between the parties, which was comprised of VPX's purchase order as the offer and Stella's delivery of the goods as acceptance, did not contain a forum selection clause. (Pl. Resp. to Transfer at 4.) In the alternative, VPX argues that, even if the invoice could be viewed as a proposal prior to the formation of a contract, the forum selection clause was a material alteration to VPX's purchase order and did not become part of the contract between the parties. (Pl. Resp. to Transfer at 6.)

Stella has also moved to dismiss the Complaint, claiming that the fraud in the inducement

---

Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003) ("[t]he burden is on the party opposing the enforcement of the forum selection clause to show that the contractual forum is sufficiently inconvenient to justify retention of the dispute"). Thus, the Court will not make a factual determination regarding when Stella sent the invoice. Likewise, it is unnecessary for the Court to make a factual determination as to whether VPX objected to the forum selection clause. (Pl. Resp. to Transfer at 9; Def. Reply to Transfer at 4.)

claim is barred by the economic loss rule and that VPX did not plead this claim with the required specificity required under Rule 9(b) of the Federal Rules of Civil Procedure.[3] Stella properly requests that the Court consider the Motion to Transfer before reaching the merits of the Motion to Dismiss. Thus, the Court will first address the arguments of the parties with respect to the Motion to Transfer.

## MOTION TO TRANSFER

### Legal Standard

When deciding a motion to transfer pursuant to 28 U.S.C. § 1404(a), the Court must consider "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. 1404(a). In deciding to transfer a case, the Court must view a forum selection clause as a "significant factor" in making its ruling. P & S Business Machines, Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003). In fact, "the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors." Id. quoting In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir.1989).

Forum selection clauses are enforceable in federal courts and federal law governs the decision to enforce a forum selection clause, even in diversity cases. P& S, 331 F.3d at 807. However, "[t]he validity of a forum selection clause is determined under the usual rules governing the enforcement of contracts in general." Id.

---

[3] Stella had also moved to dismiss the Complaint for insufficient service of process and to dismiss the claims against Romeo for lack of personal jurisdiction. Stella later waived its objection to service of process. (Def. Reply to Mot. to Dismiss.) As stated herein, VPX voluntarily dismissed its claim against Romeo.

Discussion

The Court begins its examination with section 672.207 of the Florida Statutes which provides, in relevant part, as follows:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>    (a) The offer expressly limits acceptance to the terms of the offer;
>    (b) They materially alter it; or
>    © Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this code.

Fla. Stat. § 672.207.

This provision was recently analyzed by the Florida Fourth District Court of Appeal in Dependable Component Supply, Inc. v. Pace Electronics, Inc., 772 So. 2d 582 (Fla. Dist. Ct. App. 2000). In that case, the buyer and seller had engaged in numerous sales transactions, each ignoring the contrary terms in the other parties' forms. Id. at 583. The buyer's purchase order did not contain a forum selection clause, and stated that "if unable to complete orders as written, notify us immediately." Id. The seller's invoice contained a forum selection clause requiring all proceedings be brought in Orange County, Florida. Id. Upon receipt of the buyer's purchase order, the seller would ship the goods by carrier and send its invoice containing the added forum selection clause. Id. The buyer remitted payment in full promptly upon receipt of the invoice. Id. After later inspection of the goods, the buyer rejected the goods as nonconforming and sued to recover the price.

Id. The seller defended, arguing that venue in Broward County was improper because of the forum selection clause requiring proceedings be brought in Orange County. Id. The court concluded that the "buyer's purchase order stated its terms, and seller's additionally stated terms materially varied the purchase order's terms." Id. at 584. The court reasoned that a forum selection clause sending the buyer to the seller's court would be a material variance. Id.

After so concluding, the court expressly disagreed with the trial court's conclusion that the buyer's failure to object to the venue provision was an implied acquiescence to it. Id. The court stated that "[a]s long as buyer insisted on using the same purchase order without a venue provision (thus proposing to rely on any venue fixed by statute), seller's conflicting designation of its home turf can only be legally understood as a material variance in every transaction." Id. at 585.

Applying section 672.207(2)(b) and Dependable Component Supply to the facts of this case, the Court finds that the forum selection clause materially altered the parties' agreement and thus did not become a part of it. As in Dependable Component, this forum selection clause sends the buyer "up to a seller's court in a suit to recover the price already paid for nonconforming goods." Id. at 584. As such, it is a term that materially alters the contract. Here, VPX's purchase order did not contain a forum selection clause whereas Stella's invoice did contain a forum selection clause. Moreover, VPX paid in full and then later rejected the goods as non-conforming. Thus, the facts of the instant case are virtually identical to the facts set forth in Dependable Component.[4]

---

[4] The Court notes that Stella cited several other cases in support of its Motion to Transfer. (Def. Mot. to Transfer at 5-6.) Those cases are distinguishable. In Salco Distributors, LLC v. Icode, Inc. there was computer software that contained a license agreement with a forum selection clause. Salco Distributors, LLC v. Icode, Inc., No. 8:05 CV 642 T 27TGW, 2006 WL 449156 (M.D. Fla. Feb. 22, 2006). The consumer was required to click "I accept" during the registration process. Thus, there was an explicit agreement by the consumer to the terms of the contract. In the instant case, there is no evidence that VPX agreed to the forum selection clause.

Nonetheless, Stella argues that the forum selection clause is not a material alteration of the contract and that this Court must engage in a case-specific analysis to determine whether the forum selection clause would result in surprise or hardship if incorporated into the contract. (Def. Reply at 2-3.) In support, Stella cites Aceros Prefabricados, S.A. v. Tradearbed, Inc., 282 F.3d 92 (2d Cir. 2002), a non-binding Second Circuit case.[5] Nonetheless, the notion that additional terms which cause surprise or hardship are terms that materially alter a contract is a proposition supported by Florida law. See Advanced MobileHome Systems, Inc. v. Alumax Fabricated Products, Inc., 666 So. 2d 166, 169 (Fla. Dist. Ct. App. 1995). This Court's reading of Dependable Component convinces the Court that a forum selection clause is, as a matter of law, a material alteration to the contact and therefore is a term that would cause surprise or hardship.

Likewise, the Court rejects Stella's argument that VPX's failure to object to the forum selection clause upon receipt of the invoice as well as payment for the goods constitutes an abandonment of VPX's right to object to the forum selection clause. In making that argument, Stella points to section 672.207(2)©, Florida Statutes. That provision requires that additional terms to a contract are part of contract, unless there is notification of objection to the additional term. This

---

The Court also rejects Stella's reliance on Marco Forwarding Co. v. Continental Casualty Co., 430 F. Supp. 2d 1289 (S.D. Fla. 2005). In that case, no dispute existed regarding whether the forum selection clause was part of the insurance contract. Instead, the court in Marco examined whether a "valid forum selection clause" should be enforced.

[5] Clearly, this Court, in a diversity case, is bound by Dependable Component, a Florida district court of appeals decision, with similar facts to the instant case. The Court does acknowledge that cases from other jurisdictions interpreting the Uniform Commercial Code may be helpful given that courts in other jurisdictions interpret identical provisions of the code. Significantly, the Eleventh Circuit has acknowledged that forum selection clauses materially alter a contract within the meaning of the section 2-207 of the Uniform Commercial Code. See Cunningham v. Fleetwood Homes of Georgia, Inc., 252 F.3d 611, 622 n.13. (11th Cir. 2001).

statute, however, makes clear that if an additional term is a material alteration, it is not necessary to lodge an objection to the additional term. See Fla. Stat. § 672.207(2)(b).

Finally, Stella argues that the forum selection clause became a part of the parties' agreement based on the usage of trade. In making this argument, Stella posits that the parties' contract arose by the parties' conduct, thus falling under section 672.207(3), Florida Statutes. Under that provision, when the writings between the parties do not establish a contract, the contract consists of terms on which the writings agree, together with any supplementary terms incorporated under any other provision of the code. See Fla. Stat. § 672.207(3). In support, Stella cites to Coastal & Native Plant Specialities, Inc. v. Engineered Textile Prods., Inc., 139 F. Supp. 2d 1326 (N.D. Fla. 2001). In that case, the court held that a contract was formed by the parties' conduct. Id. at 1334. Coastal, however, is distinguishable from the instant case. That case addressed a situation in which the buyer sent a purchase order to a seller. Id. Upon receipt, the seller sent an invoice which stated that acceptance was "subject to and expressly conditioned on the [buyer's] assent to the terms and conditions printed on the [ ] invoice" and "expressly rejected [the buyer's] terms." Id. The court concluded that the invoice was not an acceptance, but a counteroffer. Id. The contract was made by performance once the buyer accepted and paid for the goods. Id. Significant to the court's analysis was that acceptance was expressly made conditional on assent to additional or different terms. Id.; see also PSC Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C., 225 F.3d 974 (8th Cir. 2000) ("[a]lthough an acceptance containing additional or different terms [ ] will typically not preclude [section] 2-207(1) contract formation, the creation of a contract is prevented where acceptance is expressly made conditional on assent to the additional or different terms.") (internal quotation marks omitted). Here, there is no such language in either the seller's packing slip or

8

invoice. Thus, this contract was not created by performance, does not fall under section 672.207(3) of Florida Statutes, and therefore does not require the Court to examine "supplementary terms incorporated under any provision of the code," such as usage of trade. See Fla. Stat. § 672.207(3).[6]

Accordingly, for the reasons set forth herein, Stella's Motion to Transfer is denied.[7] As such, VPX's Motion to Strike Portions of Stella Reply in Further Support of its Motion to Transfer or, Alternatively, Leave to Submit a Sur-Reply is denied as moot.

## MOTION TO DISMISS[8]

### Legal Standard

It is long settled that a complaint should not be dismissed unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41 (1957). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. See Linder v.

---

[6] The Court notes that VPX also argued that the contract between the parties comprised of VPX's purchase order as the offer and Stella's delivery of the goods as acceptance. (Pl. Resp. to Transfer at 4-6.) In other words, VPX claims that the forum selection clause found on the invoice was sent after delivery of the goods and therefore was not part of the contract. Given that the Court has found that the forum selection clause on the invoice sent by Stella is unenforceable, it is unnecessary to address this argument.

[7] Notably, Stella has only moved for transfer on the basis of the forum selection clause in its invoice. In any event, the Court finds that there are no other grounds that warrant a transfer to New Jersey.

[8] In deciding the motion to dismiss, the Court will only examine the four corners of the Complaint and exhibits attached thereto, and will not consider evidence provided to the Court for the purpose of deciding the Motion to Transfer. Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (court must limit its consideration to the pleadings and exhibits attached hereto on a motion to dismiss); Caravello v. American Airlines, Inc., 315 F. Supp. 2d 1346, 1348 (S.D. Fla 2004) ("[i]n deciding a motion to dismiss, a court may only examine the four corners of the complaint.")

Portocarrero, 963 F.2d 332, 334-36 (11th Cir.1992) citing Robertson v. Johnston, 376 F.2d 43 (5th Cir.1967).

Discussion

A. Economic Loss Rule

The Complaint alleges a claim for fraud in the inducement. Stella moves to dismiss this claim on the basis of the economic loss rule. Specifically, Stella claims that VPX's claim for fraud in the inducement "is really one for fraud in the performance of the contract" and that the allegations pled by VPX in support of this claim "do not reveal any acts independent of the alleged breach of contract." (Def. Mot. to Dismiss at 8-9.) In response, VPX argues that "the fraud occurred before the contract was entered into by inducing VPX to purchase fake Hoodia." (Pl. Resp. to Mot. to Dismiss at 11.)

Under the economic loss rule, a plaintiff may not bring a tort claim to recover economic damages arising from a breach of contract, unless there are personal injury or property damages. See Jones v. Childers, 18 F.3d 899, 904 (11th Cir. 1994). The Florida Supreme Court has held that fraudulent inducement is an independent tort requiring proof of facts separate from a breach of contract action. See HTP, Ltd. v. Lineas Areas Costarricenses, S.A., 685 So. 2d 1238 (Fla. 1996). Thus, an "action on a contract and for fraud in inducing plaintiff to enter into such a contract may exist at the same time, and a recovery on one of the causes will not bar a subsequent action on the other." Id. at 1239 (citations and quotations omitted). Recent Florida appellate decisions have stated that "[t]he test to determine if the economic loss rule applies is to ask if the fraud alleged is an act of performance or in a term of the bargain." D & M Jupiter, Inc. v. Friedopfer, 853 So. 2d 485, 487 (Fla. Dist. Ct. App. 2003); see also Bankers Mutual Capital Corp. v. United States Fidelity and

Guaranty Co., 784 So. 2d 485, 488 (Fla. Dist. Ct. App. 2001); Allen v. Stephan Co., 784 So. 2d 456, 458 (Fla. Dist. Ct. App. 2000).[9] If the alleged fraud is an act of performance, it is barred by the economic loss rule whereas if the fraud is in a term of the bargain, it is not barred by the economic loss rule. See Allen, 784 So. 2d at 458.

Here, the Court finds that the alleged fraud in the inducement is in a term of the bargain between Stella and VPX. An examination of the Complaint supports this conclusion. The breach of contract claim states that "Stella is in breach of contract due to the non-conformity of said product" and, as a result of Stella's breach, "VPX has suffered harm and damages." (Complaint at ¶¶ 22-23.) In other words, the breach was the delivery of non-conforming goods. In contrast, the fraud in the inducement claim states that Romeo, as an officer and representative of Stella, knowingly made a false representation that the Hoodia was of a grade and quality that contained sufficient concentrations of P-57 as to be useful for appetite suppression and resulting weight loss through ingestion."[10] (Complaint at ¶¶ 37-40.) Significantly, the facts giving rise to the breach of contract claim are of a more narrow focus than the facts giving rise to the fraud in the inducement claim. Indeed, the facts relating to the fraud in the inducement claim concern acts taken prior to VPX entering into the contract with Stella. Those acts, which include the alleged misinformation supplied to VPX that the Hoodia contained sufficient concentrations of P-57, constitute allegations

---

[9] In making their arguments, both parties apply Florida law. Stella, however, states that the economic loss doctrine is analyzed similarly in Florida and New Jersey and notes that the parties' contract provides that New Jersey law should be applied. (Def. Mot. to Dismiss at 6 n.3.) Since the term of the contract that provides for the application of New Jersey law did not become part of the contract, there is no basis to apply New Jersey law.

[10] Although VPX dismissed Romeo as a defendant, the allegations of his acts, as an officer, may be attributed to Stella.

of fraud which caused VPX to enter into a transaction. Notably, the contract does not identify the grade of Hoodia requested by VPX in its purchase order nor does the Invoice sent by Stella reference the grade. (Purchase Order and Invoice attached to Complaint.) Instead, these documents merely state the quantity, size and price of the Hoodia. (Purchase Order and Invoice attached to Complaint.) Thus, the statements made on behalf of Stella to induce VPX to enter into a contract were never embodied into the contract.

In making this determination, the Court follows Florida precedent finding that misrepresentations or omissions that cause a party to enter into an agreement may be brought as a claim for fraud in the inducement and are therefore not barred by the economic loss rule. See e.g., Allen, 784 So. 2d at 458 (economic loss rule does not bar fraud inducement claim against sellers of a business for failing to disclose tax liabilities of the company); D & M, 853 So. 2d at 487 (prior to entering a contract for purchase of commercial property buyer was told that property had proper drainage and fraudulent inducement claim was therefore not barred by the economic loss rule); Bankers Mutual, 784 So. 2d at 489 (party who entered into an agreement based on a misrepresentation regarding the percentage of work completed on projects had claim for fraud in the inducement that was not barred by the economic loss rule).

Nonetheless, Stella argues that VPX's fraud in the inducement claim is premised on the same conduct as its breach of contract claim and VPX does not point to any acts independent of the alleged breach of contract. (Def. Mot. to Dismiss at 8) In support, Stella points to numerous federal court cases applying Florida law. (Def. Mot. to Dismiss at 7-9; Reply to Mot. to Dismiss at 1-2.) These cases, however, are distinguishable. For example, in Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co., the court found that a claim for fraudulent inducement arising from statements

allegedly made by party to induce another party to enter into a contract and which were also embodied in the contract was barred by economic loss rule. Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co., 208 F. Supp. 2d 1310, 1319 (S.D Fla. 2002); see also Behrman v. Allstate Ins. Co., 388 F. Supp. 2d 1346, 1349-50 (S.D. Fla. 2005) (finding when claim for fraud in the inducement relates to alleged breach of contractual terms, the claim is barred by economic loss doctrine); cf. Rosa v. Amoco Oil Co., 262 F. Supp. 2d 1364, 1366-68 (S.D. Fla. 2003) (misrepresentations regarding the duration of an agreement which was later contradicted in the agreement signed by the plaintiff cannot be the basis on which to bring a claim for fraudulent inducement). In other words, Excess Risk speaks to misrepresentations later incorporated as language in the contract entered into between the parties. Other cases cited by Stella concern claims that are labeled fraudulent inducement, but are actually claims for fraud in the performance. See, e.g., Mount Sinai Med. Ctr. of Greater Miami, Inc. v. Heidrick & Struggles, Inc., No. 04-13889, 2006 WL 1914587 *1-2 (11th Cir. July 12, 2006) (fraudulent inducement claim that is devoid of any misrepresentation and does not rely on acts unrelated to the contract but relates to performance of the contract is barred by economic loss rule); McCutcheon v. Kidder, Peabody & Co., Inc., 938 F. Supp. 820, 824 (S.D. Fla. 1996) (finding common law fraud claim is barred by economic loss doctrine when "conduct constituting the fraud is interwoven with the conduct constituting the breach of contract").[11]

Finally, Defendant claims that "the injury identified in Plaintiff's fraud in the inducement

---

[11] Stella also relies upon Bracco Diagnostics, Inc. v. Bergen Brusnwig Drug Co., 226 F. Supp. 2d 557, 562 (D.N.J. 2002). (Def. Mot. to Dismiss at 9.) That case is consistent with other Florida cases finding that common law fraud claim is barred by the economic loss doctrine as such a claim is actually for fraud in the performance of the contract.

claim is identical to the injury suffered as a result of Stella['s] [ ] alleged contractual breach." (Def. Mot. to Dismiss at 9.) This argument can be summarily rejected. A review of the Complaint demonstrates that VPX seeks "recovery of price paid, cover damages, consequential damages and incidental damages" with respect to the Breach of Contract claim whereas VPX seeks punitive damages with respect to its claim for fraud in the inducement. (Complaint at ¶¶ 23, 42.)

B. Fraud with Particularity

Rule 9(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). This Rule "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1370-71 (11th Cir. 1997) quoting Durham v. Business Mgmt. Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988) (internal quotation marks omitted). That stated, the Court must not allow the application of Rule 9(b) to vitiate the overall concept of notice pleading. See Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir.2001). This Rule is satisfied if the complaint sets forth (1) the exact statements or omissions made; (2) the time and place of each such statement and who made the statement or omission; (3) the substance of the statement and how it misled the plaintiff and (4) the defendants' gain due to the alleged fraud. See id. quoting Brooks, 116 F.3d at 1371.

Here, Stella argues that VPX has failed to "inform each defendant of the specific fraudulent acts that constitute the basis of the action against that defendant." (Def. Mot. to Dismiss at 5.) Notably, Stella raised this argument prior to VPX filing its notice of voluntary dismissal against

Romeo. As such, in Stella's reply memorandum, Stella notes that "Plaintiff's failure to distinguish what conduct is alleged against Stella [ ] versus against Romeo is obviated, and presumably Plaintiff intends the allegations of Romeo's representations are meant to be attributed to Stella." (Def. Reply to Mot. to Dismiss at 4 n.1.) Despite that acknowledgment, Stella argues in this reply that the Complaint fails to plead "when and where the alleged representation was made" "to whom" it was made to and "in what form." (Def. Reply to Mot. to Dismiss at 4.) Put another way, Stella asserts that the Complaint fails to put it on "sufficient notice of the claim it is expected to defend." ((Def. Reply to Mot. to Dismiss at 4.)

VPX claims that it has met the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. In support, VPX points to specific allegations in its Complaint that state that Romeo, as an officer and representative of Stella, represented that the Hoodia offered for sale was of a grade and quality that would be useful for appetite suppression. (Pl. Resp. to Mot. to Dismiss at 7 <u>citing</u> Complaint at ¶¶ 11, 37.) Furthermore, VPX pled that the Hoodia purchased on March 15, 2005 was represented to be of the grade and quality that would be useful for appetite suppression. (Pl. Resp. to Mot. to Dismiss at 7 <u>citing</u> Complaint at ¶¶ 12-15.) Romeo knowingly made this misrepresentation for the purpose of inducing VPX to purchase and pay for the Hoodia (Pl. Resp. to Mot. to Dismiss at 7 <u>citing</u> Complaint at ¶¶ 39-41.) Finally, VPX relied on this misrepresentation and, consequently, paid Stella for the Hoodia. (Pl. Resp. to Mot. to Dismiss at 7 citing Complaint at ¶ 41.)

The Court concludes that the Complaint adequately places Stella on notice of the claim against it. In examining the factors discussed by the Eleventh Circuit, the Court finds that the Complaint identifies the statement made (the representation that the Hoodia was of a grade and

quality that would be useful for appetite suppression), who made the representation (Romeo made the representation), how it misled VPX (by the purchase of the product and the expense in processing said product), and Stella's gain ($435,000.00). See Ziemba, 256 F.3d at 1202; Brooks, 116 F.3d at 1370-71. The only missing allegations concern the time and place where Romeo made the alleged false statement. As such, the Court will grant VPX leave to amend its Complaint in order to cure this deficiency. In addition, even though Ziemba and Brooks do not require the Complaint to state to whom Romeo made the alleged false statement or the form that this statement took, the Court is ordering Plaintiff to amend the Complaint to include this additional information. Finally, although the Complaint states that the agreement to sell the Hoodia was made on March 15, 2005 (Complaint at ¶ 12), it does not provide a date as to when Romeo made the alleged misrepresentation regarding the Hoodia (Complaint at ¶ 11). Thus, the amended complaint should be amended to provide this information.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendant's Motion to Transfer [DE 5] is **DENIED**.

2) Defendant's Motion to Dismiss Complaint [DE 6] is **GRANTED IN PART AND DENIED IN PART**. An amended complaint shall be filed within ten days of the date of entry of this Order.

3) Plaintiff's Motion to Strike Portions of Defendant's Reply in Further Support of its Motion to Transfer or, Alternatively, Leave to Submit a Sur-Reply [DE 20] is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 12th day of October 2006.

_____
KENNETH A. MARRA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

All counsel of record